FILED
02 OCT -2 AM 11:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| DE'ANDRA G. NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV-99-AR-1366-M |
| | ) | |
| WARDEN RON JONES, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ENTERED
OCT 2 2002

## MEMORANDUM OF OPINION

This is a civil action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, De'Andra G. Neal, alleges that his constitutional rights have been violated during his incarceration in the St. Clair Correctional Facility in Springville, Alabama. The *pro se* complaint was filed on May 27, 1999. Plaintiff names as defendants Warden Ron Jones, Deputy Warden A. L. Garrett, Captain J. Varner, Lieutenant Steven M. Hicks, Sergeant John B. Sanderson, and Sergeant Samuel Howard. Plaintiff seeks monetary damages, a declaratory judgment, and injunctive relief.

On March 28, 2000, the court entered an Order for Special Report directing that copies of the complaint in this action be forwarded to each of the named defendants and requesting that they file a special report responding to the factual allegations of the complaint. On May 26, 2000, the defendants filed their special report attaching documents and the affidavits defendants Garrett, Varner, Hicks, Sanderson, and Howard. By Order of September 10, 2002, the parties were notified that the special report filed by the defendants would be construed as a motion for summary judgment, and the plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules*



of Civil Procedure. Plaintiff did not file a response to the defendants' motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

## FACTS

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff. Plaintiff arrived at St. Clair Correctional Facility from William E. Donaldson Correctional Facility on June 30, 1998 (defendant Garrett's affidavit, defendant Howard's affidavit, defendant Hicks affidavit, defendant Varner's affidavit page one, and defendant Sanderson's affidavit). The plaintiff had already been classified as a closed custody inmate due to an extensive disciplinary history and was therefore assigned to the segregation unit upon his arrival at St. Clair Correctional Facility (defendant Garrett's affidavit and defendant Sanderson's affidavit). Because he was an administrative segregation inmate, plaintiff was assigned to building H-2, cellblock G, cell 7 (defendant Hicks' affidavit and defendant Varner's affidavit page one). Plaintiff immediately jammed his tray door lock and began masturbating and exposing himself to female officers (defendant Hicks' affidavit and defendant Varner's affidavit page one). He continued to openly masturbate and expose himself and threatened several officers who tried to secure the tray door (defendant Hicks' affidavit and defendant Varner's affidavit page one). Plaintiff received two disciplinaries for Indecent Exposure,

3

one for Threats, and one for Creating a Security, Safety, and Health Hazard (defendant Garrett's affidavit). On July 9, 1998, plaintiff was found guilty of violating Rule 38, Indecent Exposure (defendant Sanderson's affidavit ). Also on July 9, 1998, defendant Hicks ordered that plaintiff be moved to H-2 G-08, a more secure cell (defendant Hicks' affidavit and defendant Varner's affidavit page one). On July 15, 1998, plaintiff was served with a disciplinary for which he was sentenced to 45 days in disciplinary segregation (defendant Hicks' affidavit and defendant Varner's affidavit page one). On July 16, 1998, plaintiff was found guilty of violating Rule 44, Threats (defendant Sanderson's affidavit). By July 18, 1998, plaintiff had already accumulated 180 days disciplinary segregation time (defendant Howard's affidavit). On July 18, 1998, plaintiff slipped his handcuffs while on the H2 walk yard and assaulted inmate Timothy Butler with a knife (defendant Howard's affidavit and defendant Sanderson's affidavit). On July 19, 1998, plaintiff was found guilty of Indecent Exposure and Intentionally Creating a Security, Safety, and Health Hazard (defendant Sanderson's affidavit). On July 22, 1998, plaintiff was served with three more disciplinaries for which he received a total of 135 days in disciplinary segregation (defendant Hicks' affidavit). On July 24, 1998, as a result of the disciplinaries received, plaintiff was placed in cell K-6, a disciplinary segregation cell, for infractions (plaintiff's complaint page four, defendant Garrett's affidavit, defendant Howard's affidavit, defendant Hicks' affidavit, defendant Varner's affidavit page one, and defendant Sanderson's affidavit). Plaintiff's stay in disciplinary segregation was due to his unwillingness to conform to rules and regulations (defendant Howard's affidavit). During the next 13 months while he was housed in K-6, plaintiff received 42 more disciplinaries (defendant Hicks' affidavit and defendant Varner's affidavit page one). Plaintiff accumulated sentences for disciplinary violations totaling 1,238 days in disciplinary segregation (plaintiff's complaint page four and

defendant Sanderson's affidavit). Upon his arrival at cell K-6, plaintiff signed a cell inspection sheet which is dated July 24, 1998 (Document #13 Exhibit A). All cells in K-Block unit are equipped with the same items and equipment (defendant Garrett's affidavit). Plaintiff was released from K-6 after serving 525 days in disciplinary segregation and was reassigned on December 7, 1999 (defendant Garrett's affidavit and defendant Sanderson's affidavit). Plaintiff's behavior improved and he was given an early release from disciplinary segregation. He was placed in H-2 housing unit which is administrative segregation (defendant Hicks' affidavit and defendant Varner's affidavit page one). Plaintiff's segregation time was prorated to allow him an early release (defendant Garrett's affidavit). Plaintiff's behavior was the factor which caused him to be confined to disciplinary segregation from July, 1998 until December, 1999 (defendant Hicks' affidavit).

## DISCUSSION

### Official Capacities

Plaintiff sued the defendants in their official capacities, however, they are employees of the State of Alabama and cannot be held liable in damages, in their official capacities, for their own acts or those of their employees because they enjoy Eleventh Amendment immunity. Such officers are entitled to dismissal of any claims for damages brought against them in their official capacities as state officials. The United States Supreme Court has stated:

> [T]here can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed.2d 389 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed.2d 269 (1937). Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, §

5

>  14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."

*Alabama v. Pugh*, 438 U.S. 781 (1978); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). To the extent they are sued in their official capacities, the suit against the defendants is a suit against the state. There has been no consent or waiver in this action, thus, the defendants, in their official capacities, are absolutely immune from damages liability in this action. Therefore, the defendants, in their official capacities, are entitled to summary judgment on all of the claims raised by plaintiff in this action.

Individual Capacities

<u>Cruel and Unusual Punishment Claim</u>

In his complaint, plaintiff claims that on July 24, 1998, he was placed in an "unsanitary filth stripped dog house cell" for 1,238 days "without hygiene material, mattress, blanket, [and] three wholesome meals a day" as punishment for infractions. Plaintiff contends that the conditions in the cell were so unsanitary and harsh as to amount to cruel and unusual punishment in violation of the Eighth Amendment.

In order to establish an Eighth Amendment violation, a plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), (2) the defendant[s'] 'deliberate indifference' to that condition, *Wilson v. Seiter*, 502 U.S. 294, 303 (1991), and (3) causation, *Williams v. Bennett*, 689 F.2d 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (footnotes omitted), *cert. denied*, 510 U.S. 1164 (1994). Whether a particular condition of confinement constituted cruel and unusual punishment is an objective inquiry;

6

*Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985), *cert. denied*, 479 U.S. 816 (1986). *Accord Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

In determining what facts are undisputed, the court must begin with those specifically and expressly stated by the plaintiff. But, the process does not end there. In addition to the facts stated by the non-moving plaintiff, the court must also take into account those facts stated by the defendant which are not disputed by the plaintiff. Facts submitted by a defendant and not expressly disputed by the plaintiff cannot be ignored in the summary judgment calculus because they too exist as "undisputed" facts. As the Supreme Court explained in *Celotex, supra,* the ultimate burden is on the plaintiff to come forward with evidence supporting each element of his claim. Because the burden of proof in the lawsuit is on the plaintiff, he may not merely rest upon conclusory or vague pleadings, but must affirmatively rebut evidentiary matters offered by the defendant which, if left undisputed, show that the plaintiff is not entitled to recover in the action. It is noted that although plaintiff was given the opportunity to rebut the evidentiary matters offered by the defendants in their special report (See Document # 14), he has failed to do so.

Defendant Howard states in his sworn and undisputed affidavit that plaintiff was not placed in a stripped cell and that he was afforded everything allowed in a cell in disciplinary segregation. Defendant Garrett states in his sworn and undisputed affidavit that St. Clair Correctional Facility does not have any cells or units which are referred to as doghouses. He states further in his affidavit that all cells in K-Block unit are equipped with the same items and equipment. Defendant Hicks states in his sworn and undisputed affidavit that, as the cell inspection sheet shows, plaintiff was placed in a clean functional cell on July 24, 1998. In his sworn and undisputed affidavit, defendant Varner concurs and states that the cell inspection sheet shows that plaintiff was placed in a clean

cell with a mattress. Defendant Hicks states further that the cell inspection sheet shows that plaintiff had a mattress that was in good condition. It is undisputed that K-6 was inspected on July 24, 1998, by Officer C. M. Guthery upon plaintiff's placement in the cell (Document # 13 Exhibit F and defendant Garrett's affidavit). It is further undisputed that plaintiff signed the cell inspection sheet on July 24, 1998, the date on which he was placed in the cell (Document # 13 Exhibit F). The cell inspection sheet signed by plaintiff indicates that the walls and the floor of the cell were clean when he was placed in it and that the cell contained a mattress that was not torn (Document # 13 Exhibit F). Defendant Hicks states that plaintiff was not given a blanket because he was placed in cell K-6 in July and blankets are issued at the onset of cool weather. Defendant Hicks states that plaintiff was, however, given two sheets. Defendant Hicks and defendant Varner state further that plaintiff was fed two meals per day while in disciplinary segregation and that the meals met all nutritional requirements. Defendant Varner states in his affidavit that plaintiff was issued hygiene supplies on a weekly basis and that he was issued bed liners and clothes as needed.

   The undisputed evidence shows that the conditions under which plaintiff was confined were not such as would have inflicted unnecessary pain or suffering upon plaintiff. According to the cell inspection sheet signed by plaintiff, the cell walls and floors were clean and he had a mattress which was not torn. There is no evidence that plaintiff was subjected to an unquestioned and serious deprivation of basic human needs. To be deliberately indifferent, a prison official must knowingly or recklessly disregard an inmate's basic needs. Plaintiff has failed to present facts to show that the defendants were deliberately indifferent to the conditions in which he was housed. In this case, it is undisputed that plaintiff was fed two meals per day while in disciplinary segregation and that the meals met all nutritional requirements. It is further undisputed that plaintiff was issued hygiene

supplies on a weekly basis and that he was issued bed liners and clothes as needed. Clearly, plaintiff was not subjected to cruel and unusual punishment and the defendants are entitled to summary judgment on this claim.

Due Process Claim

Plaintiff claims that he was placed in disciplinary segregation on July 24, 1998 to serve a combined 1,238 day sentence for infractions without being afforded due process.

The United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472 (1995) changed the landscape in the analysis of this type of case. Dealing with a case in which a prisoner in Hawaii sued prison officials under § 1983 alleging that he had been denied due process of law before being confined to disciplinary segregation for 30 days, the court concluded that segregation as a form of punishment was not a "dramatic departure" from the ordinary conditions of incarceration. As such, segregation did not amount to a grievous loss of a "substantive" interest protected by the Due Process Clause. Unlike the loss of good-time credits at issue in *Wolff v. McDonnell*, 418 U.S. 539 (1974), mere disciplinary segregation is the type of punishment an incarcerated individual should expect, and one that ordinarily is not a major change in his living conditions. In concluding that placement in disciplinary segregation does not implicate due process, the Court held:

> We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in Wolff. The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life.

*Id.*, at 2302.

With the Court's decision in *Sandin*, no longer does the prospect of disciplinary segregation alone mandate the due-process procedures defined in *Wolff*. Placement in a one-man cell is not dissimilar to other forms of confinement found in the Alabama prison system, including administrative segregation, protective custody, and the frequent lockdowns of general population that occur. As such, disciplinary segregation is not a "dramatic departure" from the ordinary conditions of confinement nor is it a "major disruption in [prisoners'] environment." Thus, under the authority of *Sandin v. Conner*, prisoners sentenced to disciplinary segregation have no protected interest requiring the due-process protections outlined in *Wolff v. McDonnell*. Because there is no right to procedural due process of law before the imposition of disciplinary segregation, neither the lack of due process nor any deficiency in procedure actually used is actionable under the Fourteenth Amendment or § 1983.

The court notes that while the combined sentence of 1,238 days may seem harsh, it is undisputed that plaintiff accumulated 48 disciplinaries during the period in question and that 42 of those disciplinaries were received after his initial placement in disciplinary segregation (defendant Sanderson's affidavit and defendant Varner's affidavit page one). It should also be noted that plaintiff was released from disciplinary segregation after his behavior improved after serving only 510 to 525 days (defendant Hicks' affidavit, defendant Varner's affidavit page one, and defendant Sanderson's affidavit).

While before *Sandin* plaintiff's claim may have sufficiently stated a due process claim under § 1983, *see, e.g. Kyle v. Hanberry*, 677 F.2d 1386 (11th Cir., 1982); *Hensley v. Wilson*, 850 F.2d 269 (6th Cir., 1988), it no longer does. With respect to the disciplinaries for which plaintiff was not

sentenced to the loss of good time credits, the defendants are entitled to summary judgment on his claim that he was denied due process prior to being placed in disciplinary segregation.

The court notes that on one of the disciplinary reports submitted by the defendants as an exhibit, it is clear that the plaintiff was sentenced to the loss of six months of earned good time (Document # 13 Exhibit H). This disciplinary is subject to the due-process protections outlined in *Wolff v. McDonnell*, *supra*.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set forth the following minimum due process requirements to be accorded prisoners facing disciplinary proceedings that could result in the loss of good time credits: (1) "written notice of the charges must be given" to the inmate at least 24-hours in advance of the proceeding; (2) the inmate "should be allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (3) the inmate must be given "a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Wolff*, 418 U.S. at 564-66.

It is clear that these requirements were met in this case. It is undisputed that the plaintiff was given advance notice of the charges. According to the disciplinary report (Document # 13 Exhibit H), plaintiff was served with a copy of the disciplinary report charging him with violating Rule 38, Indecent Exposure/Exhibitionism on July 7, 1998 and the hearing was held on July 9, 1998. Plaintiff does not dispute the information contained in the disciplinary report. The disciplinary report further shows that plaintiff was permitted to testify and to call witnesses at the hearing. According to the disciplinary report, plaintiff testified as follows: "I can't beat no two officers. Don't know why I even came up in here" (Document # 13 Exhibit H page two). The disciplinary report indicates that

12

plaintiff did not desire to call any witnesses. The disciplinary report shows that plaintiff was given a written statement setting forth the evidence relied on and the reasons for the disciplinary action on July 15, 1998.

The standard of proof required for a finding of guilt in prison disciplinary proceedings "is necessarily lower than that demanded in criminal parole-probation revocation, or civil proceedings." *Smith v. Rabalais*, 659 F.2d 539, 546 (5th Cir. 1981). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

> Th[e "some evidence"] standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, *the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.* . . . Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id*. at 455-56 (citations omitted) (emphasis added).

During the hearing, the arresting officer, Officer Tracey Woods, testified that plaintiff did masturbate towards her through the tray hole of his assigned cell in an indecent manner. When questioned by the hearing officer as to whether or not she could positively identify plaintiff as the inmate involved, Officer Woods testified that she could. Officer Corley also testified during the hearing as a witness. When questioned by the hearing officer as to whether or not he observed plaintiff masturbating in H2 G # 07 on July 6, 1998 at approximately 1:20 a.m., Officer Corley testified that he did observe plaintiff masturbating in H2 G # 07 on July 6, 1998 at approximately

1:20 a.m. This is clearly "some evidence" supporting the hearing officer's finding that the plaintiff was guilty of Indecent Exposure/Exhibitionism as charged in the disciplinary report. It is clear that the hearing officer relied on the testimony of Officers Woods and Corley when making his finding. The evidence shows that plaintiff was afforded due process during this hearing. The defendants are entitled to summary judgment.

The Court EXPRESSLY FINDS that there are no genuine issues of material fact and that defendants Warden Ron Jones, Deputy Warden A. L. Garrett, Captain J. Varner, Lieutenant Steven M. Hicks, Sergeant John B. Sanderson, and Sergeant Samuel Howard are entitled to judgment as a matter of law. Accordingly, for the reasons stated above, defendants Warden Ron Jones, Deputy Warden A. L. Garrett, Captain J. Varner, Lieutenant Steven M. Hicks, Sergeant John B. Sanderson, and Sergeant Samuel Howard's motion for summary judgment is due to be GRANTED and this action against defendants Warden Ron Jones, Deputy Warden A. L. Garrett, Captain J. Varner, Lieutenant Steven M. Hicks, Sergeant John B. Sanderson, and Sergeant Samuel Howard DISMISSED WITH PREJUDICE.

A separate final judgment consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

DATED this 2nd day of October, 2002.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE